UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JESSICA HUFFMAN,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

Case No. 2:22-cv-00925-EJY

**ORDER**

Plaintiff Jessica Huffman ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance ("DIB") under Title II of the Social Security Act (the "Act"). ECF No. 16. On October 19, 2022, the Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and Remand. ECF Nos. 17, 18. For the reasons stated below, the Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff filed an application for disability insurance benefits on January 31, 2019, alleging disability beginning on October 27, 2016. Administrative Record ("AR") 310. The Social Security Administration denied Plaintiff's claim initially and upon reconsideration (AR 364-79, 381-401), followed by Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ"). AR 422-23. The ALJ held her hearing in March 2021. AR 310. Plaintiff was represented by counsel who amended her alleged disability onset date to July 19, 2019. *Id*. On May 14, 2021, the ALJ issued a decision finding Plaintiff not disabled from her amended alleged onset date through the date of the decision. AR 310-26. Plaintiff requested review of the ALJ's decision (AR 480-81), but the Appeals Council denied her request in May 2022. AR 1-6. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g)

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla." It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). And, a court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under the Act.

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps consider:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id.*

**B. Summary of ALJ findings.**

At step one, the ALJ found Plaintiff meets the insured status required by the Social Security Act through December 31, 2024, and had not engaged in substantial gainful activity from the amended alleged onset date of July 19, 2019. AR 312. At step two, the ALJ found Plaintiff suffered from the following severe impairments: "Arthritis; Bilateral Thumb Carpometacarpal (CMC) Osteoarthritis, right greater than left, status post Right CMC Arthroplasty/Trapeziectomy; Left Carpal Tunnel Syndrome; Degenerative Disc Disease; and Headaches (20 CFR 404.1520(c))." *Id*. After a lengthy discussion of Plaintiff's medically determinable impairments (AR 313-14), the ALJ found, at step three, that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 315-16.

In preparation for step four, the ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except … [Plaintiff] could lift and/or carry twenty pounds occasionally and ten pounds frequently, and the … [Plaintiff] could stand, walk, and/or sit for six hours in an eight-hour workday, but she would need to have a sit/stand option such that she could sit or stand at will but would not leave the workstation or be off task. The … [Plaintiff] could occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. She could frequently balance and occasionally stoop, kneel, crouch, or crawl. The … [Plaintiff] could frequently handle and finger, or use a computer keyboard, but could not do so continuously (i.e. repetitively) for more than thirty minutes without a five-minute break, during which she could perform other tasks. She should avoid concentrated exposure to extreme heat or cold, vibration, workplace hazards, and unprotected heights.

AR 316. At step four, the ALJ determined Plaintiff could not perform her past relevant work as a nurse assistance. AR 324. At step five, the ALJ found, based on Plaintiff's age (a younger individual), education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff could perform. AR 325. The ALJ concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, from July 19, 2019 through the date of ALJ's decision. AR 326.

C. **Plaintiff's Claims**.[1]

1. The ALJ's RFC Assessment is not Supported by Substantial Evidence.

Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial evidence. ECF No. 16 at 5. Plaintiff states that Dr. Chahal, a state agency physician who reviewed Plaintiff's record on November 20, 2019, opined that Plaintiff could engage in a range of light work and found no need to impose any "manipulative limitations." *Id*. at 6 *citing* AR 374-76. Plaintiff next tells the Court that Dr. Amon reviewed the record on reconsideration and agreed with Dr. Chahal. *Id*. *citing* AR 396-98. Plaintiff states that the ALJ found these opinions mostly persuasive. *Id*. *citing* AR 321-22.

Plaintiff recites that the "ALJ found the need to impose additional limitations because these physicians did not review the entirety of the record, including those concerning Huffman's 2021 right hand surgery." *Id*. *citing* AR 322. Plaintiff next discusses evidence that became part of the record after the state agency review, which revealed injections in her thumbs no longer provided benefit by December 2020, radiographs of her thumbs showing moderate arthritic changes, a failed course of nonoperative treatment, and a right first extensor compartment release, right thumb ligament reconstruction and tendon interposition, and right thumb CMC arthroplasty/trapeziectomy. *Id*. at 6-7 *citing* AR 1749-1750, 1752, 1755, 1816-817, 1885-887.

Plaintiff argues the ALJ's finding that Plaintiff could engage in frequent manipulative limitations for no more than 30 minutes, followed by a five minute break, citing to normal strength and tone in her upper extremities, is not supported by the evidence. *Id*. Plaintiff admits that progress notes on January 27, 2020 and December 21, 2020 revealed normal strength in her upper extremities, but argues the record also reflects conservative treatment had failed and Plaintiff required surgical intervention. *Id*. Plaintiff concludes that "[i]t defies commonsense that … [she] could engage in frequent manipulative activities at all times since the amended onset date." *Id*. Plaintiff says the ALJ did not adequately explain how he arrived at her manipulative limitation determination because there is "no medical opinions of record after March 27, 2020" addressing these limitations. *Id*. at 8.

---

[1] The parties agree that the ALJ fairly and accurately summarized the medical evidence in the administrative record except, for Plaintiff, where she specifically states otherwise. ECF Nos. 16 at 5; 17 at 3.

Plaintiff says this error is not harmless, and then discusses the Vocational Expert ("VE") who stated "an individual limited to occasional handling, fingering and feeling could perform some retail jobs, but sitting and standing would not be at will because customer demands" would require otherwise. *Id*. at 8-9. Plaintiff demands the case be remanded "for proper evaluation of the medical evidence." *Id*. at 9.

2. <u>Plaintiff says the ALJ did not Articulate Clear and Convincing Reasons for Discounting her Subjective Complaints</u>.

Plaintiff concedes the ALJ summarized her written statements and testimony concerning use of her hands adequately; addressed her hip pain; and summarized the presence of back and neck pain, and activities of daily living. *Id*. at 9, 10. However, Plaintiff says the record does not show she uses her hands "a lot" during the day and that the ALJ's citations to her activities do not support she engaged in frequent manipulation. *Id*. at 11. Without further explanation, Plaintiff states: "[t]he ALJ did not properly consider … [her] testimony with later findings that required surgical intervention in February 2021[; and] discounted … [her] complaints regarding the use of her hands based upon a lack of objective support." *Id*. at 11. Plaintiff concludes that the "ALJ failed to articulate legally sufficient reasons for rejecting" her testimony and, on this basis, the case should be remanded for further proceedings. *Id*.

**D. <u>The Commissioner's Response</u>.**

1. <u>Substantial Evidence Supports the ALJ's RFC Finding</u>.

The Commissioner states that when crafting the RFC, the ALJ considered "Plaintiff's longitudinal medical records, subjective symptom complaints, and the prior administrative medical findings … from the State agency medical consultants." ECF No. 17 at 6 *citing* AR 316-24. The ALJ then "synthesized" the persuasive evidence to come to her light work, with several RFC restrictions, supported by her reasoning and the medical evidence. *Id*. at 6-7 *citing id*. The Commissioner summarizes the medical evidence from "July 19, 2019 until approximately December 2020" showing Plaintiff's "hand-related impairments were mild to moderate and responded well to treatment. *Id*. at 7 *citing* AR 317-18, 321, 1040, 1059, 1788-89, 1817, 1882. The Commissioner cites to substantial record evidence demonstrating Plaintiff's report that hand braces and injections

relieved her thumb pain. *Id*. at 7-8 *citing* AR 318, 346-47, 586, 1752, 1755, 1660, 1663, 1669. The Commissioner concludes this is "substantial evidence that, from her alleged onset date until approximately December 2020, Plaintiff had the capacity to perform light work with a limitation to frequent handling and fingering and a five-minute break every 30 minutes." *Id*. at 8. The Commissioner also cites Drs. Chahal and Amon found Plaintiff did not have any manipulative limitations. *Id*. *citing* AR 375, 397.

Beginning in December 2020, the Commissioner recognizes Plaintiff testified her hand pain worsened, injections were no longer effective, diagnostic imaging showed her arthritis and tenosynovitis worsened, and Plaintiff had surgery in February 2021 to address her right thumb issues; however, the Commissioner says two weeks after surgery Plaintiff had full motor function in her thumb. *Id*. at 9 *citing* AR 317-18, 346, 1779, 1870-71. Plaintiff had left thumb surgery in April 2021, attended post-surgery physical therapy, and was discharged to a home program in August 2021 at which time she had "full range of motion in her wrist and in all of her fingers." *Id*. *citing* AR 31, 33, 46, 123-25.

The Commissioner concludes that the above evidence is substantial and supports the RFC for the entire period at issue, but even if the ALJ should have concluded Plaintiff's RFC decreased after December 2020, this error is harmless. The Commissioner argues that because Plaintiff could perform light work with a limitation of frequent handling and fingering until approximately December 2020, and the remaining time period is less than twelve months—December 2020 to May 2021 when the ALJ issued her decision—it is irrelevant whether Plaintiff's RFC decreased in December 2020. *Id*. at 9-10. The Commissioner concludes Plaintiff did not meet her burden of demonstrating her "December 2020 setbacks with her hands were expected to last for a continuous period of at least 12 months"; nor could she meet this burden because by August 2021, her hand function and pain has significantly improved due to surgery and physical therapy. *Id*. at 10.[2]

---

[2] In Reply, Plaintiff contends the Commissioner's argument regarding harmlessness misconstrues the statute because the statute allows for an impairment to have lasted "or can be expected to last" for at least a continuous 12 month period. ECF No. 19 at 5. Plaintiff says that while she had surgery in February and April 2021, and improvement was noted, she "still required the use of splints." *Id*. *citing* AR 32-33. Plaintiff concludes that "[b]ased upon the evidence … it is reasonable to conclude that a decreased RFC would be expected to last for 12 consecutive months beginning in December 2020." *Id*.

      2. The ALJ properly evaluated Plaintiff's Symptom Testimony.

The Commissioner argues the ALJ provided legally valid reasons for finding Plaintiff's subjective symptom testimony was inconsistent with the record by identifying the testimony and record evidence, and explaining the inconsistencies. *Id*. at 10 *citing* AR 317-324. When conducting her analysis, the Commissioner argues the ALJ summarized Plaintiff's subjective complaints, found her medically determined impairments could reasonable have been expected to produce her symptoms, but that Plaintiff's testimony regarding intensity, persistence, and limiting effects of her symptoms were "not entirely consistent" with the record evidence. *Id*. at 11 *citing* AR 317. The Commissioner argues "the ALJ accepted that Plaintiff's impairments significantly limited her functional abilities" and addressed her pain by limiting her to light work, with five minute breaks ever 30 minutes. *Id*. at 11-12.

With respect to Plaintiff's daily living, the ALJ found Plaintiff could independently attend to her personal care and hygiene, prepare meals, do household chores, and engage in hobbies all of which "require fine and gross manipulation, as well as significant postural and exertional functioning." *Id*. at 13 *citing* AR 317, 321, 580, 581-82, 584-85, 612-15. This evidence, the Commissioner argues, supports the conclusion that the ALJ provided specific reasons and substantial evidence to discount Plaintiff's symptom testimony. *Id*.[3]

**E. Discussion**

1. Whether the ALJ's RFC Calculation was Supported by Substantial Record Evidence.

An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R.

[3] Plaintiff argues on reply that while there is no dispute regarding her daily activities, "there is no evidence of record that these activities require more than occasional manipulation throughout the day." ECF No. 19 at 6. Plaintiff says if the ALJ thought there was inconsistency between her daily activities and statements regarding pain, she should have asked Plaintiff. *Id*. at 6-7. Plaintiff also say that the ALJ's failure to explain what evidence undermined her specific testimony is reversible error. *Id*. at 7.

§ 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch*, 400 F.3d at 679. Consequently, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

Specifically, the ALJ summarized that Plaintiff (1) described piercing headaches that disrupts her vision, and painful tendonitis and arthritis in her neck, back, hands, and hips; (2) alleged her right foot, neck, back, and left eye "continue to worsen"; (3) reported weakness, muscle spasms, and muscle loss in her back; (4) claimed difficulty walking, typing, writing, bending, sitting, lifting, driving, and standing; and (5) claimed difficulty squatting, reaching, sitting, kneeling, climbing stairs, seeing, completing tasks, and using her hands. AR 317 *citing* numerous exhibits and Plaintiff's hearing testimony. After summarizing treatment on her hands through December 2020, the ALJ notes Plaintiff's right thumb surgery in February 2021, which went well; although, Plaintiff said she would need physical therapy. AR 318. Plaintiff's left thumb treatment was then summarized as was her hip concerns; however, the ALJ notes that 2019 and 2020 left hip images were "unremarkable," "full range of motion in her bilateral hips," a denial of hip pain with rotation, and that Plaintiff claimed hip pain sometimes made walking unbearable. *Id*. Plaintiff also reported hip injections provided "good relief." *Id*.

With respect to Plaintiff's back pain, the ALJ notes that a March 2019 MRI was "unremarkable" with respect to her back and thoracic spine; May 2019 x-rays showed some joint arthritis, spondylosis, and mild lumbar facet anthropathy, and progressive moderate multilevel degenerative disc disease. AR 319. The ALJ also noted Plaintiff complained of low back and neck pain, which she said "worsened when her neck pain was severe and could limit her ability to reach and lift." *Id*. However, the ALJ cited evidence showing that in May 2019 Plaintiff "had a full range of motion in her neck and grossly full range of motion in her back, with the exception of limited

flexion and side bending to the left." *Id*. Later appointments did show a reduced range of motion in her cervical, thoracic, and lumbar spine. *Id*.

After an additional summary of evidence, the ALJ explained Plaintiff obtained temporary pain relief and improved mobility with physical therapy, beginning in January 2020 medication reduced the pain and remained helpful in managing pain, she received steroid injections and facet joint injections in May 2020, nerve branch block injections in October 2020, and underwent rhizotomy/radiofrequency ablation in December 2020. AR 320. The rhizotomy/radiofrequency resulted in a significant decrease in Plaintiff's pain, but Plaintiff testified she continued to experience "shooting stabbing pain in her back." *Id*.

The ALJ discussed Plaintiff's headaches at length, but that Plaintiff testified medication helped with these symptoms. *Id*. The ALJ also cited numerous doctor's visits during which Plaintiff "denied dizziness and headaches" while maintaining "intact cranial nerves with intact strength, sensation, motor function, and reflexes." *Id*.

Based on all of the above, the ALJ concluded:

> To avoid exacerbating her neck and back pain, hip pain, or triggering a headache, the claimant would be limited to light exertional work, but she would need a sit/stand option to help alleviate her symptoms. Moreover, her pain and limited ranges of motion in her spine would limit the claimant to no more than occasional stooping, kneeling, crouching, crawling, or climbing ramps and stairs. The claimant should also avoid concentrated exposure to temperature extremes so as to not trigger her symptoms. Due to the combination of her pain, headaches, dizziness, and upper extremity symptoms, the claimant could never climb ladders, ropes, or scaffolds and should avoid working around vibration or workplace hazards. In addition, due to the claimant's intermittent radicular pain into her right arm, as well as her left carpal tunnel syndrome and bilateral hand pain, the claimant should only frequently handle, finger, and feel, including keyboarding. To alleviate her hand and neck pain, the claimant would need to take a five-minute break from such manipulative tasks after every thirty minutes.
>
> ***
>
> Despite her allegations of difficulty walking, the claimant was not prescribed any assistive devices (Hearing Testimony). At times, the claimant did have an antalgic gait …. However, she more regularly demonstrated a normal gait and station …. As such, she could frequently balance despite her dizziness and perform light exertional walking and standing. Moreover, the claimant maintained grossly

> normal strength and tone in her bilateral upper and lower extremities ….[4] This included grossly normal strength in her bilateral fingers …. The claimant also maintained grossly intact sensation …. Therefore, the claimant would be able to perform light exertional work with mostly occasional postural movements. The claimant's activities of daily living are also consistent with her residual functional capacity. For example, she remained able to perform her daily activities. This included preparing simple meals and doing short shopping trips …. In addition, she would do light household chores, like the dishes, laundry, and some sweeping …. While doing these chores, the claimant would alternate between sitting and standing …. She helped care for her dog, including feeding it …. The claimant was also able to perform her personal care activities …. The claimant remained able to drive when she needed to …. In fact, prior to COVID-19, the claimant would visit her parents in Utah about once a month …. The claimant would watch television and use her computer every day, and she would go fishing maybe once a month …. These activities all require fine and gross manipulation, as well as some postural and exertional functioning.

AR 321.

The record reflects the totality of the ALJ's RFC finding that Plaintiff is able to perform a limited range of light work was based on a thorough discussion and consideration of Plaintiff's longitudinal medical records as well as Plaintiff's testimony. To the extent that the limitations in the RFC are inconsistent with Plaintiff's pain and symptom testimony, the ALJ gave specific, clear and convincing reasons for the difference based on the information summarized including post December 2020 medical reports. It is not sufficient for Plaintiff to argue "commensense" should

---

4 Plaintiff states the ALJ came to this conclusion citing five pages in the AR. ECF No. 16 at 7. AR 809 is part of a health report from the University of Utah for May 1, 2019 noting a full range of motion and no loss of motor strength in Plaintiff's upper extremities. AR 1788 is another May 1, 2019 report from an office visit "in South Jordan Muscoloskeletal" that repeats the finding stated on AR 809. AR 1676 is part of a report from Salt Lake Spine & Sports Medicine from January 27, 2020 (AR 1677) in which Plaintiff reported "chronic neck pain and more recent onset right upper extremity weakness and low back pain." AR 1675. The assessment reviewed two MRI scans of the cervical and lumbar spine finding (1) "mild to moderate multilevel degenerative changes without significant herniation or central stenosis; mild left foraminal stenosis at C5-6 and C4-5"; and (2) "minimal facet arthritis … no focal disc herniation or stenosis." AR 1676. Her physical examination found "[s]trength, bulk, and tone of all major muscle groups of the bilateral upper extremities is normal." *Id*. AR 1820 is part of a December 21, 2020 report from Salt Lake Spine & Sports Medicine reporting Plaintiff's chief complaint was chronic neck and low back pain (AR 1819), and reported "[s]trength, bulk, and tone of all major muscle groups of the bilateral upper extremities is normal [5/5]." AR 1820. Finally, Plaintiff refers the Court to AR 1835 relied upon by the ALJ (*see* AR 322). AR 1835 is part of a medical record from Aspen Quick Care where Plaintiff was seen in July 2020 with a chief complaint of constant neck and low back pain. AR 1833. The report reflects normal findings for Plaintiff's GI tract, Lymph, Muscular, Neurological, Psychiatric, Respiratory, and Skin functions. AR 1835. No treatment was provided, and the plan was for Plaintiff to return in three days if not better. *Id*. Plaintiff complains that this evidence does not take into account what happened after December 2020, but Plaintiff fails to cite to the ALJ's decision at AR 318 in which the ALJ discusses Plaintiff's February 2021 right thumb surgery, which went well; although, Plaintiff said she would need physical therapy. The ALJ also noted: "Following her right hand surgery, … [Plaintiff] continued to have left thumb pain." AR 322 *citing*, *inter alia*, 40F/2,4 (found at AR 1869 and 1871). These pages, cited by the ALJ, are part of a medical report from March 9, 2021 from the University of Utah reporting Plaintiff's biggest complaint is her painful left thumb.

have led the ALJ to a different conclusion regarding her ability to engage "in frequent manipulative activities …." *See* ECF No. 16 at 7.

An ALJ is not required to perform a "function-by-function analysis ... so long as the RFC is otherwise supported by substantial evidence." *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 313 (W.D.N.Y. 2013). And, Plaintiff misunderstands her burden of proof. Plaintiff's burden extends beyond merely questioning the sufficiency of the ALJ's explanation for excluding certain limitations from an RFC. Plaintiff must affirmatively identify evidence justifying the inclusion of such limitations. *See Ukolov*, 420 F.3d at 1004 ("The claimant carries the initial burden of proving a disability.") (citation omitted); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling."); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim ..."). Plaintiff did not meet her burden.

The ALJ reviewed Plaintiff's testimony and provided what Plaintiff agrees is an accurate summary of that testimony in comparison to medical evidence. The ALJ specified the RFC, which limits Plaintiff to performing "light work," included limitations in light of Plaintiff's hearing testimony and medical evidence. The administrative record shows the ALJ carefully considered and incorporated Plaintiff's testimony in the RFC while doubting the degree to which Plaintiff's symptoms actually prevented her from performing all work functions in light of the record as a whole.

The Court finds Plaintiff's arguments insufficient to support remand of this case for further proceedings. Plaintiff makes sweeping statements that the "ALJ summarized the objective finding of the record, fails to explain what evidence undermined specific testimony" (ECF No. 19 at 7), but Plaintiff offers no counter-specific evidence. Plaintiff does not overcome the deferential substantial evidence standard. If the record reasonably "support[s] either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1099 (N.D. Cal. 2019). As discussed fully above, the Court finds the ALJ's RFC was

supported by substantial evidence. As such, the Court upholds the Commissioner's decision and denies Plaintiff's Motion for Reversal and Remand.[5]

2. The ALJ's Determination Regarding Plaintiff's Testimony.

An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations and internal quote marks omitted). Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citation and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.")). Further, "[w]hile an ALJ may find testimony not credible in part or in whole, he may not disregard it solely

[5] Plaintiff claims the ALJ's RFC is unsupported by substantial evidence because "the manipulative limitations do not represent a reasonable interpretation of the medical evidence during the entire period." ECF No. 19 at 4. Plaintiff says she needed surgical intervention after conservative treatment failed. *Id.* But the ALJ did consider Plaintiff's right thumb surgery and left thumb pain in February and April 2021 respectively. AR 318, 322. The burden of proof to establish a disability rests with Plaintiff. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 117 S.Ct. 209 (1996). In order to meet this burden, Plaintiff must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical … impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Plaintiff does not meet this burden. Rather, she argues conservative treatment failed, she had right thumb surgery in February 2021, and left thumb surgery in April 2021. ECF No. 19 at 5. Plaintiff then states: "it is reasonable to conclude that a decreased RFC would be expected to last for 12 consecutive months beginning in December 2020." *Id.* Plaintiff's conclusion does not establish disability, which requires her "to make out a case both that [she] has an impairment … and that [she] ... met the [twelve month] duration requirement." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). Because the Court finds the ALJ's RFC assessment is supported by substantial evidence, and Plaintiff's arguments fail, the Court does not reach the issue of harmlessness.

because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The Ninth Circuit recognizes the clear and convincing evidence standard as "the most demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Trevizo v. Berryhill*, 871 F.3d 664 678 (9th Cir. 2017). An ALJ's failure to provide "specific, clear, and convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it precludes a court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

The ALJ provided a thorough discussion of and reasons for partially discounting Plaintiff's symptoms testimony. AR 317-24. That is, the ALJ stated that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reason explained in" her decision. AR 317. The lengthy discussion above at 8-12 demonstrates the ALJ reviewed the objective medical findings, the medical history, and the degree of medical treatment required, as well as Plaintiff's testimony, including her descriptions of daily living. AR 317-324 and numerous citations therein. More specifically, the ALJ stated that despite allegations of difficulty walking, Plaintiff "was not prescribed any assistive devices" AR 321 *citing* Hearing Testimony. The ALJ noted Plaintiff "regularly demonstrated a normal gait and station." *Id. citing* Exhibits 8F/5; 15F/2; 18F/2; 20F/2; 22F/2; 30F/2; 34F/11; 37F/1, 4, 11, 23, 26. With respect to daily activities, the ALJ discussed that Plaintiff prepared simple meals; took short shopping trips; engaged in light household chores such as dishes, laundry, and some sweeping and, that when engaged in these chores, Plaintiff would alternate between sitting and standing; she helped care for her dog, including feeding; and Plaintiff was able to care for herself and was able to drive when needed. AR 321. Plaintiff also would watch television and use her computer every day, and she would go fishing maybe once a month. *Id. citing* Exhibits 8E; 12E, and hearing testimony. The evidence on which the ALJ relied

was objective medical evidence and constitutes specific, clear and convincing reasons to reject the intensity, persistence and limiting effect of Plaintiff's symptoms.

Moreover, the ALJ did not wholly discount Plaintiff's testimony regarding intensity, persistence or limiting effects of her symptoms when she recognized in the RFC that "[t]o avoid exacerbating her neck and back pain, hip pain, or triggering a headache, the claimant would be limited to light exertional work, but she would need a sit/stand option to help alleviate her symptoms." *Id.* The ALJ further recognized Plaintiff's "pain and limited ranges of motion in her spine would limit … [Plaintiff] to no more than occasional stooping, kneeling, crouching, crawling, or climbing ramps and stairs. … Due to the combination of her pain, headaches, dizziness, and upper extremity symptoms, the claimant could never climb ladders, ropes, or scaffolds and should avoid working around vibration or workplace hazards." *Id.* Finally, the ALJ stated that "due to … Plaintiff's intermittent radicular pain into her right arm, as well as her left carpal tunnel syndrome and bilateral hand pain, the claimant should only frequently handle, finger, and feel, including keyboarding. To alleviate her hand and neck pain, the claimant would need to take a five-minute break from such manipulative tasks after every thirty minutes." AR 321.

Plaintiff's argument that the ALJ failed to explain the connection between subjective complaints and objective evidence fails. Not only did the ALJ describe the inferences she made arising from the evidence, but the record on its face provides evidence that contradicts Plaintiff's allegations of total disability. *See Molina*, 674 F.3d at 113 (even if a claimant's activities, at most, "suggest some difficulty functioning, [those activities] may be grounds for discrediting [the plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment."). Accordingly, the Court finds the ALJ's determination regarding Plaintiff's testimony is supported by specific, clear, and convincing reasons.

**IV.    ORDER**

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 16) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 17) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Defendant and close this case.

DATED this 9th day of December, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE